IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAURENCE JONES, | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A-C PRODUCT LIABILITY TRUST, | : | |
| et al., | : | |
| | : | E.D. Pa. Civil Action No. |
| Defendants. | : | 2:11-cv-30663-ER |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    October 15, 2015


        This case was transferred in January 2011 from the

United State District Court for the Northern District of Ohio to

the United States District Court for the Eastern District of

Pennsylvania, where it became part of the consolidated asbestos

products liability multidistrict litigation (MDL 875). The case

was assigned to the Court's maritime docket ("MARDOC").

Plaintiff alleges that he was exposed to asbestos while working

aboard various ships. Plaintiff asserts that he developed an

asbestos-related illness as a result of his exposure to asbestos

aboard those ships.

        For the reasons that follow, the Court will deny

Defendants' motion.

I.   **BACKGROUND**

At some point in 1996, Plaintiff brought claims against various defendants, including various shipowners represented by Thompson Hine LLP ("the Thompson Hine Shipowners" or "Defendants"). By way of Order dated May 2, 1996 (or perhaps by way of Order dated March 14, 1997), Judge Charles Weiner[1] dismissed those claims administratively, leaving open the possibility for the action to be pursued at a later, unspecified date.[2] Approximately five years after filing his asbestos action,

_____

[1]   Judge Weiner presided over MDL 875 from its inception in 1991 until his passing in 2005. In 2005, Judge James Giles was designated to preside over MDL 875, where he remained until his resignation from the bench in 2008. In October 2008, Judge Eduardo Robreno, the undersigned, was appointed to succeed Judge Giles, and he has presided over MDL 875 since that date.

[2]   On May 2, 1996, Judge Weiner administratively dismissed all pending MARDOC claims without prejudice, noting that the claimants had "provide[d] no real medical or exposure history," and had been unable to do so for months. In re Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL 239863, at *1–2 (E.D. Pa. May 2, 1996). Judge Weiner also ordered that these "asymptomatic cases" could be activated if the plaintiffs began to suffer from an impairment and could show (1) "satisfactory evidence [of] an asbestos-related personal injury compensable under the law," and (2) "probative evidence of exposure" to a defendant's products. Id. at *5. On March 14, 1997, Judge Weiner applied that dismissal order to all future MARDOC cases. In 2002, the MDL Court ordered that administratively dismissed cases remain active for certain purposes (e.g., entertaining settlement motions and orders, motions for amendment to the pleadings, etc.), and in 2003, clarified that the administrative dismissals were "not intended to provide a basis for excluding the MARDOC claimants from participating in settlement programs or prepackaged bankruptcy programs[.]" In re Am. Capital Equip., 296 Fed. App'x 270, 272

on December 13, 2001, Plaintiff filed a voluntary petition under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Louisiana. The bankruptcy case was closed approximately five months later, on May 30, 2002. On January 24, 2011 – approximately nine years after the bankruptcy case was closed and approximately fifteen years after Plaintiff first filed his asbestos action – the MDL Court reinstated the asbestos action, which had been dismissed by Judge Weiner in 1996 or 1997. A summary of this timeline of events is as follows:

- 1996 – Asbestos action filed
- May 1996 or March 1997 – Asbestos action administratively dismissed
- December 13, 2001 – Bankruptcy action filed
- May 30, 2002 – Bankruptcy action closed
- January 24, 2011 – Asbestos action reinstated

     Defendants have moved for summary judgment, arguing that (1) Plaintiff's claims are barred by way of judicial estoppel because he failed to disclose the asbestos action as an asset in his bankruptcy filing, and (2) Plaintiff cannot pursue the asbestos action because it is now owned by the bankruptcy estate.

---

(3d Cir. 2008) (quoting In re Asbestos Prods. Liab. Litig. (No. VI), Order Granting Relief to MARDOC Claimants with Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb. 19, 2003)).

## II.   LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting

4

this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

      B.    The Applicable Law

The parties appear to assume that Defendants' legal arguments regarding "judicial estoppel" and the "real party in interest" are matters of federal law that should be decided in the first instance by the Court. The Court agrees with this approach. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).[3] In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362–63 (E.D. Pa. 2009) (Robreno, J.). Therefore, the Court will apply Third Circuit law in deciding the issues raised by Defendants' motion.

## III. THE PARTIES' ARGUMENTS

      A.    Judicial Estoppel

Defendants contend that Plaintiff's claims are barred on grounds of judicial estoppel. Specifically, they contend that

---

[3] "A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." Ryan Operations, 81 F.3d at 358 n.2.

Plaintiff took irreconcilably inconsistent positions in his
bankruptcy proceeding and the instant proceeding. Defendants
state that Plaintiff concealed the existence of his asbestos
claims when filing for bankruptcy by not reporting them as
pending or likely claims on Schedule B ("Personal Property"),
while simultaneously asserting such claims in the current and
then-pending asbestos action. They further assert that a finding
of bad faith is warranted because Plaintiff had knowledge of the
asbestos claims at the time that he filed for bankruptcy and had
a motive to conceal the claims from the Bankruptcy Court (i.e.,
to keep any proceeds of the claims while reducing the amount of
assets available for distribution amongst the creditors - a
motive Defendants assert is common to nearly all debtors in
bankruptcy). Finally, Defendants contend that no lesser remedy
is warranted because the sanction of barring the asbestos claims
is necessary to (1) keep Plaintiff from profiting from the
omission and (2) preserve the integrity of the bankruptcy
proceedings.

     Plaintiff contends that the asbestos claims are not
barred on grounds of judicial estoppel. First, Plaintiff
contends that he did not take inconsistent positions between his
bankruptcy filing and the present asbestos action because at the
time of his bankruptcy filing – and throughout the entire
duration of that action – his asbestos claims were dismissed,

6

such that he was not required to list them as an asset in his bankruptcy action. Moreover, Plaintiff argues that even if he should have identified the asbestos claims, the failure to do so was a good faith mistake such that judicial estoppel is not warranted.

Second, Plaintiff asserts that Defendants bear the burden of establishing bad faith, but have no evidence that Plaintiff acted in bad faith when he did not list his asbestos claims as an asset in his bankruptcy filing. Additionally, Plaintiff suggests that bad faith cannot be proven in light of the fact that the claims were dismissed long before he filed for bankruptcy and were only reinstated by the MDL Court long after the bankruptcy was closed.

   B.   <u>Real Party in Interest/Standing</u>

In the alternative, Defendants contend that Plaintiff has no right to pursue the claims because the claims no longer belong to Plaintiff and instead belong to the bankruptcy trustee. Specifically, Defendants argue that, even though Plaintiff did not report the asbestos claims as assets in the bankruptcy filing, as required by 11 U.S.C. § 541(a)(1), those claims automatically became part of the bankruptcy estate when the bankruptcy petition was filed. As a result, they assert that only the bankruptcy trustee can administer the claims.

Defendants also argue that because Plaintiff did not reveal the asbestos claims, such that they were never properly scheduled as assets, the trustees were incapable of passing those claims back to Plaintiff through abandonment of any remaining assets not administered (as would normally happen pursuant to 11 U.S.C. § 554). As such, Defendants assert that, even though the bankruptcy action has closed, the rights to the asbestos claims did not revert back to Plaintiff upon that closure and instead remain with the trustee, such that Plaintiff may not now pursue them.

Plaintiff asserts that, because the asbestos claims were dismissed during the entire pendency of the bankruptcy action, they were never assets of the bankruptcy estate – regardless of whether or not Plaintiff disclosed them. In short, Plaintiff argues that the bankruptcy estate could not have an asset that was not in existence at the time of the bankruptcy.

## IV.  DISCUSSION

The bankruptcy code requires debtors seeking benefits under its terms to schedule, for the benefit of creditors, all his or her interests and property rights. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988); 11 U.S.C. §§ 521, 1125. This duty of disclosure includes not only pending lawsuits or lawsuits the debtor intends to bring, but

8

even any potential and likely causes of action. <u>See</u> <u>Krystal</u> <u>Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.</u>, 337 F.3d 314, 322 (3d Cir. 2003); <u>Oneida</u>, 848 F.2d at 417 (providing that "[i]t has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest"). However, debtors are not required to list "every 'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset disclosure form." <u>Freedom Med., Inc. v. Gillespie</u>, No. 06-3195, 2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting <u>Krystal</u> <u>Cadillac</u>, 337 F.3d at 323).

Once the debtor has filed his bankruptcy petition, the bankruptcy estate - which in a Chapter 7 case is controlled by the trustee - "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences." <u>In re O'Dowd</u>, 233 F.3d 197, 202 (3d Cir. 2000). "While a bankruptcy case is pending, it is the trustee, and not the debtor, who has the capacity to pursue the debtor's claims." <u>In re Kane</u>, 628 F.3d at 637 (internal quotation marks and citations omitted). Additionally, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action which a debtor fails to schedule, remains property of the estate because it was not abandoned and not administered." <u>Allston-Wilson v. Philadelphia Newspapers, Inc.</u>, No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20,

2006); see also In re Kane, 628 F.3d at 637 ("an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554") (quoting Hutchins v. IRS, 67 F.3d 40, 43 (3d Cir. 1995)).

Judicial estoppel is a "doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and citations omitted). At the heart of judicial estoppel is the idea that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Id. (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p. 782). However, this doctrine is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." Id. It "should only be applied to avoid a miscarriage of justice" and "is only appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324 (internal quotation marks and citations omitted). The "doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a

10

scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362

(quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir.

1980)). "It is a fact-specific, equitable doctrine, applied at

courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir.

2010).

The Third Circuit Court of Appeals has formulated this

test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two
> positions that are irreconcilably inconsistent.
> Second, judicial estoppel is unwarranted unless the
> party changed his or her position "in bad faith -
> i.e., with intent to play fast and loose with the
> court." Finally, a district court may not employ
> judicial estoppel unless it is "tailored to address
> the harm identified" and no lesser sanction would
> adequately remedy the damage done by the litigant's
> misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp.

Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir.

2001)). The Third Circuit has further concluded that a

"rebuttable inference of bad faith arises when averments in the

pleadings demonstrate both knowledge of a claim and a motive to

conceal that claim in the face of an affirmative duty to

disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at

416-18); Ryan Operations, 81 F.3d at 363. However, the

application of this inference does not arise "from the mere fact

of nondisclosure." Ryan Operations, 81 F.3d at 364. Third

Circuit precedent makes clear that a court should conduct an

11

individualized factual assessment regarding, <u>inter</u> <u>alia</u>,
knowledge and motive of the debtor surrounding disclosure of
assets in a bankruptcy action. <u>See</u> <u>id.</u> at 363-64 (concluding
that the inference did not apply where the creditors were most
likely unaffected by the failure to disclose, the debtor
received no benefit from its non-disclosure, and that there was
no evidence that the debtor sought to conceal the claims
deliberately); <u>Krystal Cadillac</u>, 337 F.3d at 321-324 (applying
estoppel after analyzing the facts regarding knowledge and
motive).

V.    **ANALYSIS**

    A.    <u>Judicial Estoppel</u>

        Defendants contend that, because the dismissal of
Plaintiff's asbestos claims was merely administrative (such that
the claims could be reinstated by Plaintiff or the MDL Court at
some point in the future), the claims were assets whose omission
from Schedule B of the bankruptcy action constituted an
inconsistent position between the two lawsuits and creates an
inference of bad faith. Plaintiff contends that because the
claims had been in a dismissed stage for over four years at the
time of the bankruptcy filing, they were not in essence assets
and did not need to be disclosed – and that, if they did

constitute assets that should have been disclosed, the failure
to disclose them was a good faith mistake.

> i.   Step One: Has Plaintiff Taken Two Irreconcilably
>      Inconsistent Positions?

It is undisputed that Plaintiff did not list asbestos
claims as assets in his bankruptcy filing. Plaintiff's duty of
disclosure included identifying pending lawsuits, lawsuits he
intended to bring, and any potential and likely lawsuits. See
Krystal Cadillac-Oldsmobile, 337 F.3d at 322. By failing to
include his asbestos claims as an asset in his bankruptcy
filings, Plaintiff represented to the Bankruptcy Court that such
an asset did not exist. Now, in this Court, Plaintiff is pursing
those same claims that he represented did not exist.
Accordingly, the two positions are irreconcilably inconsistent.
See id. at 319-320.

> ii.  Step Two: Did Plaintiff Change His Position In
>      Bad Faith

It is difficult to divine, through a prism of twenty
years later, the exact nature and scope of the "administrative
dismissals." See Bartel v. Various Defendants, 965 F. Supp. 2d
612, 617 (E.D. Pa. 2013) (Robreno, J.) (explaining the
difficulty in attempting to discern orders that were entered
over twenty years ago in the context of personal jurisdiction in

the MARDOC cases).[4] While Judge Weiner's orders appear to invite reinstatement subject to certain conditions, none of the cases that were administratively dismissed was ever reinstated from 1997 to 2009, until this Court, <u>sua</u> <u>sponte</u>, did so <u>en</u> <u>masse</u>. That a layman would have had the foresight to know in 2001 when he filed for Chapter 7 bankruptcy, that ten years later a new presiding Judge of the MDL would reopen his asbestos case, albeit fifteen years after it was filed, would have required unrealistic power of prescience. Rather, for all practical purposes, the entire MARDOC litigation in the MDL Court - including Plaintiff's case - was in a "black hole," uncertain to ever emerge again. <u>See</u> Hon. Eduardo C. Robreno, <u>The Federal Asbestos Product Liability Multidistrict Litigation (MDL-875): Black Hole or New Paradigm?</u>, 23 Widener L. J. 97, 126 (2013).

Under these circumstances, the Court finds that the failure to disclose the asbestos claims was not in bad faith, nor an attempt to play "fast and loose" with the Bankruptcy Court. <u>See</u> <u>Krystal Cadillac</u>, 337 F.3d at 319-20.[5] Accordingly,

---

[4]        "Now, some 25 years later, the Court, with the assistance of counsel, is called upon to divine the meaning of less-than-pellucid orders entered long ago by prior courts, and to disentangle the parties from a web of procedural knots that have thwarted the progress of this litigation." <u>Bartel</u>, 965 F. Supp. 2d at 614.

[5]        While the Third Circuit has said that, a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal

the Court does not find that Plaintiff changed his position "in bad faith" such that it warrants the application of judicial estoppel. See Ryan Operations, 81 F.3d at 363.[6] Accordingly, Defendants' motion for summary judgment on grounds of judicial estoppel will be denied. See Anderson, 477 U.S. at 248-50.

B.   Real Party in Interest/Standing

Defendants next contend that, despite Plaintiff's failure to list the asbestos claims on his bankruptcy petition, the claims now belong to the bankruptcy trustee (pursuant to 11 U.S.C. § 541(a)(1)) such that Plaintiff has no right to pursue them. They assert that, because Plaintiff did not properly schedule those claims as assets, the trustees were incapable of passing those claims back to Plaintiff through abandonment of any remaining and unpursued assets as would normally happen

---

that claim in the face of an affirmative duty to disclose," Krystal Cadillac, 337 F.3d at 321, the Third Circuit has also noted that an inference of bad faith does not always arise from "the mere fact of non-disclosure." Ryan Operations, 81 F.3d at 364. Under the facts of this case, the Court need not decide whether there was a lack of bad faith on the part of Plaintiff, or whether the inference of bad faith was rebutted, in that in either event, the same result is obtained.

[6]      Additionally, the Court has reviewed the bankruptcy petition filed by Plaintiff, see ECF No. 65-2, and concludes that, to the extent the law generally requires disclosures of the type of potential claims that were pending at the time of the bankruptcy filing, an omission of those claims may very well have been based on a good faith mistake of what was required by the documents, or a simple incorrect assessment of the viability of his long-dormant claims. See Ryan Operations, 81 F.3d at 362.

pursuant to 11 U.S.C. § 554. Here, the Defendants' position has some initial merit.

It is true that, once a debtor has filed his bankruptcy petition, the bankruptcy estate, which is controlled by the trustee, "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences," In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000), and that "it is the trustee, and not the debtor, who has the capacity to pursue the debtor's claims." In re Kane, 628 F.3d at 637 (internal quotation marks and citations omitted). It is also true that, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action, which a debtor fails to schedule, remains property of the estate because it was not abandoned and not administered." Allston-Wilson, No. 05-4056, 2006 WL 1050281, at *1; In re Kane, 628 F.3d at 637 (quoting Hutchins, 67 F.3d at 43).

In the instant case, Plaintiff erred by failing to disclose his administratively dismissed asbestos claims when he filed his bankruptcy petition. While the Court has held that this error was not in bad faith and thus not barred by judicial estoppel, these claims are nonetheless part of the bankruptcy estate as they were not only potential claims, but were realized claims technically held in abeyance by the Court, and thus needed to be disclosed. Under these circumstances, the claims

16

remain part of the bankruptcy estate and the trustee remains the
real party in interest for such claims, even after the
bankruptcy was closed. See Killmeyer v. Oglebay Norton Co., 817
F. Supp. 2d 681, 689 (W.D. Pa. 2011) (granting the trustee's
motion to substitute for the plaintiff as the real party in
interest since the debtor's unscheduled pre-petition claim could
only be administered by the trustee); Saellam v. Norfolk S.
Corp., No. 06-123, 2007 WL 1653737, at *4 (W.D. Pa. June 6,
2007) (concluding that "[b]ecause Plaintiff's cause of action is
part of the bankruptcy estate, and has not been abandoned by the
trustee, I hold Plaintiff is not the real party in interest and
that only the trustee in bankruptcy, as sole representative of
Plaintiff's estate, has standing to pursue the instant
lawsuit"); Allston-Wilson, 2006 WL 1050281, at *1 (holding that
where it was undisputed that the plaintiffs cause of action
arose before her bankruptcy and that she failed to list the
claim on her bankruptcy schedule, only the trustee could pursue
the claim); see also Biesek v. Soo Line R. Co., 440 F.3d 410,
413-14 (7th Cir. 2006) (concluding that the trustee was the real
party in interest for plaintiff's pre-bankruptcy claim which he
failed to list as a bankruptcy asset and upholding the dismissal
of the case since the claim did not belong to the plaintiff and
the trustee had not sought to intervene).

Having held that the trustee, and not Plaintiff, is the real party in interest of the instant asbestos claims, the Court must determine the appropriate remedy. Given that the claims belong to the estate and that, therefore, distributions of any recovery by the trustee should be made in accordance with the priorities set forth in the Bankruptcy Code, the trustee shall be given the opportunity to decide, in the first instance, whether he/she will prosecute the claims.

The Court does not underestimate the practical difficulties involved. The bankruptcy case is now closed in the Bankruptcy Court for the Eastern District of Louisiana, and the identity and whereabouts of the trustee are unknown to this Court. To expedite the process of putting the trustee on notice of the claims, the Court will direct the Clerk of this Court to (1) create a copy of this memorandum and accompanying order to be filed on the docket of Plaintiff's bankruptcy case in the Bankruptcy Court for the Eastern District of Louisiana (No. 01-bk-19752-JAB); (2) ascertain the identity of the trustee; and (3) serve a copy of said memorandum and order upon the trustee at his/her last known address. The trustee will have sixty (60) days from the date of the filing of the order on the docket of the Bankruptcy Court to seek to reopen the Bankruptcy action and to advise this Court that he/she intends to prosecute the

instant asbestos claims.[7] In such event, the Court will stay the instant proceedings while the bankruptcy estate is reopened (providing monthly updates to the Court on the status of the petition to reopen).[8] Once the bankruptcy estate is reopened, the trustee will have thirty (30) days from the date of the reopening of the estate to move this Court to substitute himself/herself as the party-plaintiff in this case.

In the event that (1) the trustee fails to advise this Court within sixty (60) days from the date the order is filed on the docket of the Bankruptcy Court that he/she intends to proceed with the instant claims,[9] (2) he/she declines to do so,

---

[7]      The trustee will be ordered to provide a signed letter certifying his/her (a) filing of a petition with the Bankruptcy Court to reopen Plaintiff's bankruptcy proceedings and (b) intention to be substituted as party-plaintiff in the instant case.

[8]      Once the trustee has petitioned the Bankruptcy Court to reopen the bankruptcy proceedings, and until a motion for substitution as the party-plaintiff has been filed by the trustee, he/she will be required to file a monthly status update with this Court (by the last day of each month), (a) informing the Court of the status of the petition to reopen the bankruptcy proceedings, and (b) certifying his/her continuing intention to pursue the asbestos claims in the instant case.

[9]      It is not clear whether the trustee's failure to respond to the Court's order would constitute an express or implied abandonment of the instant claims under 11 U.S.C. § 554. See Mele v. First Colony Life Ins., Co., 127 B.R. 82, 85-86 (D.D.C. 1991) (noting that the mere fact the trustee was notified of the pending lawsuit, but failed to administer it, would not necessarily mandate a finding of implied abandonment). Importantly, however, the party seeking to demonstrate abandonment bears the burden of persuasion. Hanover Ins. Co. v.

(3) he/she fails to provide a monthly status update, or (4) he/she fails to move to be substituted as party-plaintiff within thirty (30) days of the reopening of the bankruptcy action, the Court will give Plaintiff an additional thirty (30) days[10] to provide this Court with notice that he intends to petition the Bankruptcy Court for the Eastern District of Louisiana to reopen the bankruptcy proceedings and move in that court to compel abandonment of the instant claims. See 11 U.S.C. § 554(b).[11] If

---

Tyco Industries, Inc., 500 F.2d 654, 657 (3d Cir. 1974). In bankruptcy proceedings, the trustee's position is similar to that of a fiduciary to both the debtor and creditors. Under the bankruptcy code, the trustee must "investigate the financial affairs of the debtor," 11 U.S.C. § 704(a)(4), and "collect and reduce to money the property of the estate," 11 U.S.C. § 704(a)(1). Moreover, the trustee "has the duty to maximize the value of the estate," Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 353 (1985), and "in so doing is bound to be vigilant and attentive in advancing the estate's interests." In re Martin, 91 F.3d 389, 394 (3d Cir. 1996). "In sum, it is the trustee's duty to both the debtor and the creditor to realize from the estate all that is possible for distribution among the creditors." Id. (citing 4 Collier, Bankruptcy ¶ 704.01 (15th ed.)).

[10]     This would be ninety (90) days from the date the memorandum and order are filed on the Bankruptcy Court's docket (for events pursuant to (1) or (2)); or thirty (30) days from the date of the pertinent failure pursuant to (3) or (4).

[11]     Plaintiffs will be ordered to provide a signed letter certifying their intention to petition the Bankruptcy Court to reopen Plaintiff's bankruptcy proceedings and move the Bankruptcy Court to compel abandonment of the instant claims. For the reasons set forth in footnote 9 herein, the Bankruptcy Court for the Eastern District of Louisiana is the court in the best position to provide the proper parties (including any potential creditors) with sufficient notice of Plaintiff's

20

such notice is timely provided to this Court, the Court will
stay the instant proceedings pending the disposition of
Plaintiff's motion in the Bankruptcy Court.

If notice is not received from either the trustee or
Plaintiff in the specified timeframe, the Court will dismiss
Plaintiff's case for failure to substitute the real party in
interest. See Fed. R. Civ. P. 17(a)(3) ("The court may not
dismiss an action for failure to prosecute in the name of the
real party in interest until, after an objection, a reasonable
time has been allowed for the real party in interest to ratify,
join, or be substituted."). At this time, however, and under
these circumstances, summary judgment in favor of Defendants on
grounds of the real party in interest/standing will be denied
without prejudice. Anderson, 477 U.S. at 248-50.

## VI.  CONCLUSION

For all of the reasons stated above, Defendants'
motion for summary judgment will be denied.

---

motion to compel abandonment of the instant claims. See 11
U.S.C. § 554(b).